IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEO JOHN RITES, #182727 | * | |
|         Plaintiff | * | |
| v. | * | CIVIL ACTION NO. AMD-03-2596 |
| COMMISSIONER OF CORRECTIONS, *et al.* | * | |
|         Defendants | * | |
| | *** | |

**MEMORANDUM**

The gravamen of this 42 U.S.C. § 1983 complaint for damages and injunctive relief[1] goes to plaintiff's claims that in July 2002, administrators at the Maryland House of Correction Annex ("MHCA") ordered him off protective custody and into a cell on general population even though the assignment to general population posed a threat to his life because of enemies at MHCA.[2] Plaintiff further claimed that he remained housed on disciplinary segregation due to adjustment sanctions related to his refusal to accept general population assignments and that MHCA staff have failed to provide him classification reviews or sufficient writing materials. Defendants' first motion to dismiss or, in the alternative, motion for summary judgment was denied without prejudice.[3] Paper Nos. 43 & 44. Plaintiff was afforded limited discovery and the parties were directed to file supplemental dispositive motions. Defendants filed a supplement to their motion to dismiss or, in

---

[1] Plaintiff seeks compensatory and punitive damages, a court order directing that he be taken off disciplinary segregation and placed on protective custody at MHCA or any prison facility to which he may be transferred, and that he be provided back pay and all diminution credits lost as a result of his segregation housing. Paper No. 4.

[2] Plaintiff alleges that while housed at the former Maryland Penitentiary in 1987, a contract was placed on his life for unpaid drug debts, which he claims he did not owe.

[3] The court concluded that defendants had failed to provide materials in support of the 2002 decision to remove plaintiff from administrative segregation and had failed to respond to plaintiff's claims that he has enemies in MHCA general population.

the alternative, motion for summary judgment. Paper No. 58. Plaintiff filed his opposition response.[4] Paper No. 88. The pending motions are ready for this court's consideration and may be determined without an oral hearing. *See* Local Rule 105.6. (D. Md. 2004).

As indicated by this court in its earlier opinion, while prisoners do not have a liberty interest in classification decisions regarding prison housing assignments, *Sandin v. Conner*, 515 U.S. 472, 486 (1995), allegations that prison officials are knowingly transferring a prisoner into a dangerous housing assignment may state a viable failure-to-protect claim under the Eighth Amendment. The prisoner must establish that prison officials "know of and disregard an excessive risk to inmate health and safety; the officials must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The issues squarely before this court concern whether defendants knew that moving plaintiff into MHCA general population would present a risk to his safety and well-being, and what if any harm plaintiff experienced.

Defendants maintain that plaintiff has been on either administrative or disciplinary segregation since October 1991. Paper No. 58, Ex. 1. There is no dispute that in 1996, plaintiff was placed on administrative segregation because of alleged enemies at MHCA. Defendants allege that plaintiff's housing on administrative segregation was reevaluated in July 2002, and it was determined that plaintiff could safely return to housing on general population.[5] *Id*.

---

[4]Plaintiff simultaneously filed motions for appointment of counsel and for full discovery. Paper Nos. 86 & 87.

[5]Defendants state that one of plaintiff's claimed enemies remained assigned to protective custody while another claimed enemy was housed in general population. Paper No. 58, Ex. 1. Defendants maintain that it was "felt that [plaintiff] could be safely housed away from that individual" inmate on general population. *Id*.

Again, there is no dispute that plaintiff was ordered to move to MHCA general population on July 17, 2002. He refused the order, claiming that he would be harmed if assigned to general population. Paper No. 58, Ex. 1. Records show that throughout 2002, 2003, and 2004, plaintiff was again ordered to move to general population but refused to do so, resulting in additional sanctions to be served on disciplinary segregation. *Id*. Plaintiff remained on disciplinary segregation because of the number and proximity of his infractions.

Defendants assert that plaintiff was returned to administrative segregation on October 25, 2004, based upon issues arising out of his racial beliefs. *Id*. The assignment was reviewed on December 3, 2004, and disapproved by MHCA Case Manager Henson and Assistant Warden Hill, who found that plaintiff's history of voicing his racial beliefs was not a reason to continue him on administrative segregation. *Id*., Ex. 2. He was ordered reassigned to general population.

On February 3, 2005, plaintiff was reassigned to administrative segregation by MHCA Warden Peguese, who disagreed with the recommendation of Henson and Hill.[6] *Id*. However, defendants claim that plaintiff was never moved off administrative segregation during the period from December 3, 2004, to February 3, 2005. Warden Peguese indicates that: (1) plaintiff will remain in administrative segregation "for a very long time;" (2) his assignment to administrative segregation is "for his own safety"; (3) there is no plan to change his housing assignment; and (4) plaintiff did not lose any diminution credits as a result of the infractions he received for refusing housing assignments from 2002 until he returned to administrative segregation in February 2005. *Id*., Ex. 3.

---

[6]Defendants state that on or about February 3, 2005, officials at Division of Correction headquarters contacted MHCA officers regarding inappropriate material sent to headquarters. Paper No. 58, Ex. 4. They assert that plaintiff seemingly acknowledged that he had obtained the photographic materials from an unnamed source and had sent the photographs to headquarters. *Id*. I find this information irrelevant to the issues pending before the court.

3

Defendants again maintain that plaintiff has named numerous enemies that cannot be verified. *Id*., Ex. 2. They indicate that two named enemies, Wendel Beard and Roosevelt Brandon, are in MHCA general population and a third enemy, Calvin Tolliver, is in protective custody at MCHA. *Id*. Defendants claim that plaintiff cannot be assigned to MHCA protective custody due to Tolliver's assignment.

In his opposition, plaintiff maintains that there is no dispute of material fact and reiterates his claims that defendants' declarations and affidavits are bogus and that their actions have placed him in harm's way.[7] Paper No. 88.

There is no dispute that plaintiff remained on a secured custody status at MHCA for at least six years. According to defendants, plaintiff was housed on administrative segregation due to alleged enemies at MHCA. Plaintiff has consistently maintained that his custody status was based upon debts owed to drug dealers. Defendants now acknowledge that during the course of a routine classification/enemies review in July 2002, personnel concluded that plaintiff could be safely housed in general population away from an enemy. Plaintiff continued to refuse the general population assignment. He received a number of tickets and was housed on disciplinary segregation. He was returned to administrative segregation in October 2004, where, according to Warden Peguese, he will remain on a long-term assignment.[8]

---

[7] Plaintiff again refers this court to his classification history, indicating that before his transfer to MHCA in 1991, he was housed on protective custody. Paper No. 88. He also notes that in 1993 and 1994, prior attempts were made by MHCA classification personnel to remove from protective custody, and he remained on disciplinary segregation from that time until 1996, as a sanction for his refusal to go into general population. *Id*. He claims that from 1996 to July 2002, he remained on administrative segregation. *Id*.

[8] Defendants have provided an undated listing of plaintiff's claimed enemies. Paper No. 58, Ex. 2. A number of inmates could not be identified or were found to be housed at other prisons. Inmates Wendell Beard and Roosevelt Brandon are housed in MHCA general population. Inmate Calvin Tolliver is housed on MHCA protective custody. *Id*.

Plaintiff seemingly alleges that defendants' February 3, 2005, decision to house him on administrative segregation for his own safety involves the same reasons which existed in July 2002, when classification personnel attempted to remove him from administrative segregation into general population. Defendants state that the July 17, 2005, recommendation was a judgment call and was not made in disregard for plaintiff's safety. Notwithstanding this disagreement, there is no evidence that plaintiff was physically harmed throughout the course of his housing assignment from July 2002 to February 2005, when he was officially reassigned to administrative segregation. Further, it remains uncontroverted that he did not lose any institutional credits as a result of the disciplinary findings for refusal to move to MHCA general population. Therefore, the only issue before this court is whether plaintiff was harmed for the time spent on disciplinary segregation.

The court concludes as a matter of law that plaintiff suffered no actionable harm. Generally, assignment to disciplinary segregation does not invoke a liberty interest. *See Sandin*, 515 U.S. at 484; *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). There is no showing that the conditions of MHCA disciplinary segregation experienced by plaintiff were atypical from the regular day-to-day conditions on administrative segregation or were significantly more onerous then those of MHCA administrative segregation.[9]

---

[9]Plaintiff claims that he was harmed by defendants' actions. He makes general comments regarding the denial of a job and outdoor recreation, but notes only that prior to being "forced off" protective custody in 1993 and 1994, he had a good institutional record, worked as a barber, got outside recreation, and received regular weekly visits. Paper No. 88 at 16. In addition, he now states that while on disciplinary segregation he had urine and feces thrown on him by other inmates. *Id*. Plaintiff's statements do not alter this court's conclusion. First, any alleged privileges afforded to plaintiff prior to 1993 and 1994, are not relevant under *Sandin* for purposes of evaluating the conditions of confinement on MHCA disciplinary segregation versus administrative segregation. Also, even if plaintiff's claims of inmate assaults while on disciplinary segregation are true, such actions are unfortunately an all-too-common occurrence in a prison setting. In other words, there is no showing that such events are endemic only in (or disproportionately in) disciplinary segregation housing.

For these reasons, the court discerns no actionable constitutional violation. Defendants' motion to dismiss or, in the alternative, motion for summary judgment shall be granted.[10] An order follows.

Filed: February 23, 2006                                  _/s/_____
                                                          Andre M. Davis
                                                          United States District Judge

---

[10] As previously noted, plaintiff was afforded limited discovery with regard to the review and production of documents. Further, he has consistently demonstrated the ability to present his legal claims and arguments to the court through motions, declarations, and verified materials. In light these findings and this court's ruling on the defendants' dispositive motion, plaintiff's motions for appointment of counsel and for full discovery shall be denied.